IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Judge R. Brooke Jackson

Civil Action No. 11-cv-01950-RBJ-CBS

TERESA GARCIA,

    Plaintiff,

v.

ARAPAHOE COUNTY SHERIFF'S OFFICE,
J. GRAYSON ROBINSON, in his personal capacity,
DAVID WALCHER, in his personal capacity,
VINCE LINE, in his personal capacity,
TOM MCNEVIN, in his personal capacity, and
MARK CAMPBELL, in his personal capacity,

    Defendants.

## ORDER

The case is before the Court on plaintiff's motion for partial summary judgment [docket #43] and defendants' motion for summary judgment [#46]. The motions have been fully briefed, and the Court heard oral argument on September 11, 2012. Two other motions pending at that time [#58 and #66] were granted at the beginning of the hearing.

### FACTS

Theresa Garcia alleges in her Second Amended Complaint [#58] that she has been a deputy sheriff with the Arapahoe County Sheriff's Office since 1997. On December 7, 2010 she submitted a written complaint to the Internal Affairs division of the Sheriff's Office in which she stated that "I work in a hostile, offensive environment. [#58-3]. Her letter addressed what she considered to be derogatory comments about and discriminatory treatment of inmates who were Mexicans illegally present in the United States. Deputy Garcia was interviewed by a Sheriffs'

Office official on the same day about her concerns. During the course of the recorded interview Deputy Garcia mentioned that she had been born in Mexico but raised in the United States, and that she had been fighting with the Department of State trying to get a passport for the last year. Transcript [#43-13] at 13; 17-18. The interviewer asked, "you're a U.S. citizen, correct?" *Id.* at 18. Deputy Garcia responded affirmatively, indicating that that is what she had been told all her life, and that her mother was a U.S. citizen born in Colorado. However, she acknowledged that Immigration personnel were indicating that she did not have enough documentation, and that they could not decide whether she was a citizen. *Id.*

On the next day, December 8, 2010 Deputy Garcia was notified that she was being suspended with pay. In her Second Amended Complaint she alleges she was given no reason for the suspension. Second Amended Complaint [#58] ¶18. In her deposition she testified that she was told that it was because of the complaints she had filed, the seriousness of the complaints, and the number of people involved. [#43-8] at 172-73. The written notice of suspension does not provide a reason. [#43-3]. However, the Sheriff's Office has an internal policy requiring that deputies must be citizens. [#52-11]. Defendants' position is that, whether or not Deputy Garcia was notified of the reason, she was suspended pending an investigation of whether she is a United States citizen. Deputy Garcia points to the timing – that this question was raised the day after she complained about discrimination and after she had been a deputy sheriff in that office for 13 years – and contends that it was an act of retaliation.

Between December 8 and December 16, 2010 defendant Line was told by an agent of the Immigration and Customs Enforcement Section of the Department of Homeland Security that Deputy Garcia had an "Alien" file at that agency, although the agent made no judgment as to whether Deputy Garcia was an illegal immigrant or could legally work in the United States.

2

[#43-11] at 133.  However, defendants also obtained verification of her Social Security number from the Social Security Administration.  [#43-24].  They learned that she had been issued a valid Social Security number.  Those facts appear to be the extent of the information obtained by defendants during that period of time.

Deputy Garcia contends that on December 16, 2010, still not knowing why she had been suspended, she was called into a meeting at the Sheriff's Office and asked to produce evidence of her citizenship.  She had not brought any evidence.  She was then handed a written termination letter signed by Sheriff Robinson.  The letter [#43-4] indicated that she would schedule a meeting with the Sheriff no later than December 23, 2010 to present "evidence relevant to your employment status."  *Id.*  The meeting lasted 11 minutes.

On December 22, 2010, in a recorded meeting with Sheriff Robinson [#43-32], Deputy Garcia indicated that she was a United States citizen, because her mother was a United States citizen when Deputy Garcia was born.  *Id.* at 3.  She presented, among other things, her mother's birth certificate and Social Security number and information about the applicable law.  She indicated (which defendants had verified on their own) that she had a Social Security number. *Id.* at 4.  Sheriff Robinson told her (incorrectly) that it would be a federal felony for him to employ her if she were not a U.S. citizen.  *Id.* at 26.  He also told her that the only documents he would accept as proof of U.S. citizenship were a passport, a birth certificate, a certificate of citizenship or a naturalization certificate.  *Id.* at 40.[1]  Deputy Garcia's evidence was deemed insufficient, and the termination stood.

In fact, Deputy Garcia was a United States citizen.  On December 29, 2010 the State Department issued a passport to her.  [#43-36].  She met with Sheriff Robinson on February 4,

---

[1] Plaintiff argues that defendants cannot specify which documents they will accept, citing Form I-9 issued by the Department of Homeland Security. [#43-35]. However, that form appears to concern eligibility for employment, not proof of U.S. citizenship.

3

2011 and showed him her passport. He reinstated her on February 9, 2011. [#43-38]. She was reinstated with full back pay.

Plaintiff's Second Amended Complaint names Sheriff J. Grayson Robinson, in his official and personal capacities, and four other Sheriff's Office officials in their personal capacities as defendants. However, during oral argument plaintiff indicated that she was voluntarily dismissing her claims against named defendants David Walcher and David Wellman. Accordingly, the defendants remaining are Sheriff Robinson, Captain Vince Line, and Undersheriff Mark Campbell. Plaintiff asserts six claims for relief: (1) a § 1983 claim asserting denial of equal protection under the Fourteenth Amendment; (2) retaliation in violation of Title VII of the Civil Rights Act of 1964; (3) national origin discrimination in violation of Title VII; (4) common law civil conspiracy; (5) a § 1985(3) and § 1986 claim of conspiracy based upon national origin; and (6) common law outrageous conduct.

### **STANDARD**

The Court may grant summary judgment if "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The moving party has the burden to show that there is an absence of evidence to support the nonmoving party's case. *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986). The nonmoving party must "designate specific facts showing that there is a genuine issue for trial." *Id.* at 324. A fact is material "if under the substantive law it is essential to the proper disposition of the claim." *Adler v. Wal-Mart Stores, Inc.*, 144 F.3d 664, 670 (10th Cir. 1998) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)). A material fact is genuine if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson*, 477 U.S. at 248. The Court will examine the factual record and make reasonable inferences therefrom in the light

most favorable to the party opposing summary judgment. *Concrete Works of Colorado, Inc. v. City and County of Denver*, 36 F.3d 1513, 1517 (10th Cir. 1994).

## CONCLUSIONS

### I. PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT [#43]: DENIED.

Plaintiff seeks summary judgment on the Second Claim as asserted in her Second Amended Complaint in which she alleges that she was suspended and terminated in retaliation for her having asserted discrimination claims. In order to establish a prima facie case of retaliation, she must show that "(1) that she engaged in protected opposition to Title VII discrimination, (2) she suffered an adverse employment action, and (3) there is a causal connection between the protected activity and the adverse employment action." *Meiners v. University of Kansas,* 359 F.3d 1222, 1229 (10th Cir. 2004). If she establishes a prima facie case, then defendants "must articulate a legitimate, nondiscriminatory reason for the adverse employment action." *Id.* If that is done, then the plaintiff must demonstrate that the asserted reason was pretextual. *Id.*

As the Court indicated during the hearing, there is a genuine dispute of material fact concerning whether there is a causal connection between Deputy Garcia's complaint about discrimination in the workplace and her suspension and termination. There is a dispute of fact and possibly a dispute of law as to whether the citizenship requirement is a legitimate business reason; the parties disagree but have not briefed the issue. Even assuming that it is a legitimate requirement for a law enforcement officer, there is a genuine dispute of material fact as to whether that reason was a pretext for a decision actually motivated by other, improper factors. Accordingly, the retaliation claim is not suitable for summary disposition.

## II.   DEFENDANTS' MOTION FOR SUMMARY JUDGMENT [#46]: GRANTED IN PART, DENIED IN PART.

Defendants seek summary dismissal of all of plaintiffs' claims. I will discuss them in claim order.

### A. First Claim – Equal Protection.

The Equal Protection Clause of the Fourteenth Amendment provides, among other things, that no State may "deny to any person within its jurisdiction the equal protection of the laws." The Equal Protection Clause "seeks to ensure that any classifications the law makes are made 'without respect to persons,' that like cases are treated alike, and that those who 'appear similarly situated' are not treated differently without, at the very least, 'a rational reason for the difference.'" *SECSYS, LLC v. Vigil,* 666 F.3d 678, 684 (10th Cir. 2012). If the State, here represented by a county sheriff's office, treats persons differently based on a suspect classification such as race or national origin, the differential treatment could only be upheld if it somehow reflected a compelling state interest.

Accordingly, one must begin by determining whether the challenged state action intentionally discriminates between or among groups of persons, and if so, turn to whether the discrimination can be justified by some governmental purpose. *SECSYS,* 666 F.3d at 685-86. During the oral argument the Court repeatedly asked plaintiff's counsel to identify the groups of similarly situated persons who received differential treatment. Counsel doggedly insisted that a comparison of similarly situated persons is unnecessary, citing *Plotke v. White,* 405 F.3d 1092 (10th Cir. 2005). However, *Plotke* has nothing to do with the Equal Protection Clause.

The Court is left to ponder how the facts alleged could support an equal protection claim. Was Deputy Garcia treated differently than non-Hispanic deputies who complain of

6

discrimination or retaliation against Hispanics? Was she treated differently than non-Hispanic deputies as to whom a question arises regarding their citizenship? No evidence of either situation has been provided. Nor is it the Court's burden to create a claim that counsel has not raised or explained.

Accordingly, the motion for summary judgment is granted as to the First Claim.

### 2. Second Claim: Retaliation in Violation of Title VII.

In her Second Claim plaintiff alleges that Sheriff Robinson, in his official capacity, retaliated against her in violation of Title VII. For the reasons set forth in denying plaintiff's motion for partial summary judgment, the Court finds that there are genuine disputes of material fact that preclude summary disposition of this claim.

### 3. Third Claim: National Origin Discrimination in Violation of Title VII.

The Court similarly finds that genuine issues of material fact preclude summary disposition of this claim, in which plaintiff alleges that Sheriff Robinson, in his official capacity, discriminated against her on the basis of her national origin in violation of Title VII.

### 4. Fourth Claim: Common Law Civil Conspiracy.

In her Fourth Claim plaintiff contend that Sheriff Robinson, Undersheriff Campbell and Captain Line, in their individual capacities, willfully and wantonly conspired to suspend and later to terminate Deputy Garcia. Defendants argue (1) in the absence of federal jurisdiction over this state law claim, the Court should decline to consider it; (2) it is barred by the Colorado Governmental Immunity Act; and (3) there is no genuine issue of material fact, and the claim should be denied as a matter of law.

Jurisdiction. The first argument was based on defendants' assumption that the Court would dismiss the federal claims. The Court has not dismissed the Title VII claims, and

therefore, it has supplemental jurisdiction over the state law claims under 28 U.S.C. § 1367.  The grounds for declining supplemental jurisdiction do not exist; neither this claim nor the sixth claim presents navel or complex issues of State law.  The state law claims do not predominate over the federal claims, which are the central focus of the case.  There are no exceptional circumstances or compelling reasons to decline jurisdiction.  *See* 28 U.S.C. § 1367(c).

Governmental Immunity.  The Colorado Governmental Immunity Act provides in pertinent part that "[a] public employee shall be immune from liability in any claim . . . which lies in tort . . . unless the act or omission causing such injury was willful and wanton." C.R.S. § 24-10-118(2)(a).  Plaintiff alleges that these defendants acted willfully and wantonly.  The terms are not defined in the statute, but defendants cite Judge Kane's decision to borrow Colorado's definition of the similar term for purposes of exemplary damages: "conduct purposefully committed which the actor must have realized as dangerous, done heedlessly and recklessly, without regard to consequences, or of the rights and safety of others, particularly the plaintiff." *See Cossio v. City and County of Denver,* 986 F. Supp. 1340, 1349 (D. Colo. 1997).  That is a reasonable definition.

Plaintiff alleges and presumably will testify at trial that after serving as a deputy sheriff for 13 years, she was suspended the day after she complained about discrimination.  She says she was not given a reason.  The defendants take the position that her suspension resulted from comments she made when she was complaining about discrimination that raised a question in their minds as to whether she might not be a U.S. citizen.  Plaintiff contends that that reason was pretextual.  However, even if I assume for present purposes that it was the reason, and the only reason, for suspending Deputy Garcia, a rational person could question whether that was a reasonable way to treat a 13-year employee and why she wasn't given a reason for the

suspension. Plaintiff alleges, and again I assume she will so testify, that at the December 16, 2010 meeting she was asked for proof of citizenship, without advance warning that this would be requested, and then handed a termination letter that had already been prepared before the meeting when she couldn't produce the evidence of citizenship on the spot. Taken together, and construing the evidence in plaintiff's favor for purposes of a summary judgment motion, the Court finds that the evidence of defendants' actions between December 7 and December 16 creates a genuine dispute of material fact as to whether the conduct was willful and wanton.

Evidence of Conspiracy. "There are five elements required to establish a civil conspiracy in Colorado[:] (1) two or more persons . . . ; (2) an object to be accomplished; (3) a meeting of the minds on the object or course of action; (4) one or more unlawful overt acts; and (5) damages as the proximate result thereof." *Jet Courier Service, Inc. v. Mulei,* 771 P.2d 486, 502 (Colo. 1989) (internal quotation marks omitted). The Complaint and even the briefing on this motion are a bit unclear on what the alleged unlawful overt acts are. *See* Response [#51] at 37-38. Plaintiff has clarified in a proposed jury instruction and in discussion at the September 24, 2012 trial preparation conference that the claim is that the Sheriff, the Undersheriff and Captain Line, individually, agreed to suspend and then terminate Deputy Garcia because she had not provided proof of U.S. citizenship, and that the requirement of citizenship is unlawful under a federal immigration statute. The parties have requested, and the Court has permitted, briefing on that statute and its application, if any, to this case. Therefore, the Court will leave the common law conspiracy claim in the case at this time pending the ultimate resolution of that issue.

**5. Fifth Claim: Conspiracy Based upon National Origin.**

This Claim asserts that all defendants conspired to deny Deputy Garcia the equal protection of the law as guaranteed by the Equal Protection Clause. Because the Court will grant

summary judgment dismissing the equal protection claim, as discussed above, the Court likewise will dismiss this claim.

### 6. Sixth Claim: Outrageous Conduct.

Under Colorado law an individual who engages in extreme and outrageous conduct either recklessly or with the intent of causing another individual severe emotional distress can be held liable for damages if the victim does experience severe emotional distress. *See Coors Brewing Co. v. Floyd,* 978 P.2d 663, 665 (Colo. 1999). "Although the question of whether conduct is outrageous is generally one of fact to be determined by a jury, it is first the responsibility of a court to determine whether reasonable persons could differ on the question." *Culpepper v. Pearl St. Bldg., Inc.,* 877 P.2d 877, 883 (Colo. 1994). Quoting the Restatement (Second) of Torts § 46 (1965) the Colorado Supreme Court noted that "'[l]iability has been found only where the conduct has been so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community. Generally, the cased is one in which the recitation of the facts to an average member of the community would arouse his resentment against the actor, and lead him to exclaim 'outrageous!'" *Rugg v. McCarty,* 476 P.2d 753 (Colo. 1970).

If one assumes, to plaintiff's benefit, that Deputy Garcia was suspended because of her national origin or her complaints about mistreatment of inmates of Mexican or Hispanic backgrounds, then the conduct was certainly unlawful. I have also commented on plaintiff's allegations that she was suspended with no indication of the reason, and that she was then given 11 minutes (without advance notice) to prove her citizenship and fired when she could not. Those allegations, if proven, could support a finding of willful and wanton conduct. It the facts

ended there, I would find that the alleged facts are also sufficient to state a claim of outrageous conduct.

However, they do not end there. When plaintiff submitted proof of her citizenship in the form defendants demanded, she was reinstated to her position as Deputy Sheriff and awarded full back pay. She remains on staff as a Deputy Sheriff to this day. That does not excuse the conduct that allegedly occurred on December 8, 16 and 22, 2010. However, the fact that plaintiff's own comments raised the issue of her possibly not being a citizen, as the Sheriff's policy required, and the fact that she was reinstated with full back pay upon submission of acceptable proof of citizenship are sufficient for this Court to hold, as a matter of law, that these facts collectively do not support a finding by reasonable jurors of extreme and outrageous conduct. Accordingly, this claim is dismissed.

**Order**

1. Motion #43 is DENIED.
2. Motion #46 is GRANTED IN PART AND DENIED IN PART. It is granted as to plaintiff's First, Fifth and Sixth Claims, which are now dismissed with prejudice. The motion is denied as to plaintiff's Second, Third and Fourth claims.

DATED this 24th day of September, 2012.

BY THE COURT:

_____
R. Brooke Jackson
United States District Judge